UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALINDA LAMAR,<br><br>  Plaintiff,<br><br>  v.<br><br>WYNDHAM VACATION RESORTS, INC., et al.,<br><br>  Defendants. | Case No. 25-cv-04191-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: ECF No. 13 |

Before the Court is Plaintiff Salinda Lamar's motion to remand. ECF No. 13. The Court finds this matter suitable for resolution without oral argument, *see* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b), and will grant the motion.

I.   **BACKGROUND**

Plaintiff Salinda Lamar brings this wage-and-hour putative class action against Defendants Wyndham Vacation Resorts, Inc.; Wyndham Destinations; Wyndham Vacation Ownership; and Wyndham Vacation Ownership Inc. (collectively, "Defendants"). She filed her complaint in the Superior Court of California for the County of Lake, asserting 13 claims for relief: (1) failure to pay minimum wages; (2) failure to pay wages and overtime under California Labor Code Section 510; (3) meal-period liability under Labor Code Section 226.7; (4) rest-break liability under Labor Code Section 226.7; (5) failure to pay vacation wages; (6) failure to comply with Labor Code Sections 245 *et seq.* and 246, which concern sick time; (7) reimbursement of necessary expenditures under Labor Code Section 2802; (8) violation of Labor Code Section 226(a), which concerns accurate wage statements; (9) failure to keep required payroll records under Labor Code Sections 1174 and 1174.5; (10) violation of Labor Code Section 221, regarding unlawful receipt or collection of wages; (11) failure to pay wages due, negotiable, and payable in cash on demand

1  under Labor Code Sections 212 and 225.5; (12) penalties pursuant to Labor Code Section 203; and

2  (13) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

3  ECF No. 1-2 at 18–31.

4  Defendants timely removed on the basis of diversity jurisdiction, ECF No. 1, and Lamar

5  has moved to remand the case back to state court, ECF No. 13.

6  **II.    LEGAL STANDARD**

7  Courts should "strictly construe the removal statute against removal jurisdiction." *Gaus v.*

8  *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "Where doubt regarding the right to

9  removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins.*

10 *Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam).

11 Diversity jurisdiction requires "complete diversity of citizenship; each of the plaintiffs

12 must be a citizen of a different state than each of the defendants." *Morris v. Princess Cruises,*

13 *Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). In addition, the amount in controversy must exceed

14 $75,000. 28 U.S.C. § 1332(a). "The amount in controversy is the amount at stake in the

15 underlying litigation" and "includes damages (compensatory, punitive, or otherwise), the costs of

16 complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract."

17 *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (citation modified).

18 "Where, as here, it is unclear or ambiguous from the face of a state-court complaint

19 whether the requisite amount in controversy is pled, the removing defendant bears the burden of

20 establishing, by a preponderance of the evidence, that the amount in controversy exceeds the

21 jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir.

22 2013) (citation modified). However:

> Because the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability, a removing defendant need not present evidence of what its ultimate liability will be—in many cases, the defendant presumably expects that figure to be zero. Instead, the defendant is permitted to rely on a chain of reasoning that includes assumptions to calculate the amount in controversy. While those assumptions cannot be pulled from thin air, they can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence. The district court's task is simply to determine if the defendant's reasoning and underlying assumptions are reasonable.

2

*Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citation modified).

## III. DISCUSSION

Lamar does not dispute that the parties are completely diverse, but she does argue that Defendants have failed to meet their burden to establish the minimum amount in controversy.

In their notice of removal, Defendants cited both Lamar's prayer for relief and attorney's fees as supporting the amount in controversy. ECF No. 1 at 8–10. They asserted that "it would not be unreasonable to expect that Plaintiff's attorneys' fees will exceed the sum of $150,000 through trial," but they did not attempt to quantify any of Lamar's damages. *Id.* at 9. Defendants' opposition to Lamar's remand motion calculates the amount in controversy as follows:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages/Off-the-Clock Work + Liquidated Damages | $9,529.35 |
| Unpaid Overtime | $17,152.83 |
| Meal Period Premiums | $19,058.70 |
| Rest Period Premiums | $19,058.70 |
| Unpaid Reimbursements | $2,525.00 |
| Waiting Time Penalties | N/A |
| Wage Statement Penalties | $4,000.00 |
| Attorneys' Fees | $82,250.00 – $150,000.00 |
| **TOTAL** | **$153,574.58 – $221,324.58** |

ECF No. 15 at 9.

Lamar argues that the Court cannot consider the information presented in Defendants' opposition and must limit itself to consideration of the notice of removal. This is incorrect. A defendant's opposition to a motion to remand may be considered "as an amendment to its notice of removal." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) ("it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"); 28 U.S.C. § 1653).

3

Nonetheless, even considering the material submitted with Defendants' opposition, the Court concludes that Defendants have not met their burden. First, as to attorney's fees, Defendants calculate a blended hourly rate for Lamar's counsel of $822.50 and cite authority for the conclusion that "100 hours is a 'conservative' estimate of how much time attorneys spend to litigate individual wage and hour employment cases."[1] ECF No. 15 at 8–9. They then "conservatively estimate," without any further justification, "that attorneys' fees could reach at least $150,000.00 based on Plaintiff's claims alone." *Id.* at 9. But this case is a putative class action, not an individual wage-and-hour case, and Defendants include no analysis on what a reasonable attorney's fee in this class case might be. Nor do Defendants consider that "the relevant sections of the California Labor Code do not authorize awards of attorneys' fees solely to the named plaintiffs in a class action, but rather to 'an employee' or 'any employee' who prevails on [their] claim," *Rodriguez v. Goodrich Corp.*, No. 2:14-cv-01026 JAM AC, 2014 WL 3842904, at *3 (E.D. Cal. Aug. 1, 2014) (citation modified), and that "any potential attorneys' fees award in this class action [therefore] cannot be attributed solely to the named plaintiff[] for purposes of amount in controversy," *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001) (distinguishing a statute that allows fees to be awarded to "representative parties"). Defendants do not provide any estimate of the number of putative class members, but the complaint alleges that there are "more than 100" class members. ECF No. 1-2 ¶ 35. Distributing Defendants' unsupported high estimate of $150,000 in attorney's fees among the low estimate of 100 class members yields a maximum of only $1,500 in attorney's fees attributable to Lamar.

Second, Defendants' damages calculations must be rejected because they rest on unreasonable assumptions. The Court does not determine specific appropriate reductions, or consider all potential flaws in Defendants' calculations, because the amount in controversy does

---

[1] The $822.50 blended hourly rate is unreliable because it is based on averaging the hourly rates of two attorneys, David Yeremian and Gregg Lander, only one of whom appears as counsel in this case. *See* ECF No. 15-2 at 2–3 (¶¶ 3–4, 6). Defendants do not provide any basis for estimating the hourly rates for Lamar's other attorneys of record, all of whom have less experience. *See id.* at 28 (¶ 24) (Lander admitted to the California Bar in 1997); ECF No. 1-1 ¶ 8 (Yeremian admitted to the California Bar in 2003; other counsel of record admitted in 2012, 2014, and 2023).

4

1  not reach the required threshold even without any reductions. Defendants calculate a total of
2  $71,324.58 in potential damages. Adding that amount to $1,500 in attorney's fees results in
3  $72,824.58—below the required $75,000 threshold. The following discussion regarding
4  Defendants' unreasonable damages assumptions only underscores their failure to meet their
5  burden to show the required minimum amount in controversy.

6  For example, Defendants have provided no justification for their assumption that Lamar's
7  unreimbursed expenses claim should be valued at $25 per pay period, for each of the 101 pay
8  periods for which she worked during the class period. *See* ECF No. 15 at 7. Nor have they
9  provided any justification for "assum[ing] 3 hours of unpaid overtime per week." *Id.* at 6.
10 Similarly, they unreasonably calculate the amount in controversy for Lamar's meal and rest period
11 claims by assuming one meal period violation per day, and one rest period violation per day, for
12 each day that Lamar worked during the class period. *Id.* at 6. The complaint alleges that
13 Defendants had a "policy and/or practice" of failing to provide meal periods or authorize and
14 permit rest periods, ECF No. 1-2 ¶¶ 32(e)–(f); that "Employees regularly worked shifts greater
15 than five (5) hours and greater than ten (10) hours" without receiving "compliant meal periods as
16 required under the Labor Code," *id.* ¶¶ 59–60; and that "Employees consistently worked
17 consecutive four (4) hour shifts," and that "Defendants failed to provide Employees with timely,
18 uninterrupted rest breaks of not less than ten (10) minutes for each consecutive four (4) hour
19 shift," *id.* ¶¶ 64–65. When a complaint alleges a policy or practice of labor law violations, that
20 does not, without more, make it reasonable to assume a 100% violation rate:

> Because the complaint does not allege that Manheim universally, on each and every shift, violates labor laws by not giving rest and meal breaks, Manheim bears the burden to show that its estimated amount in controversy relied on reasonable assumptions. While it is true that the complaint alleges that Manheim maintains "an institutionalized unwritten policy that mandates" the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift.

26 *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). Other courts have found a
27 20% violation rate to be reasonable when the complaint alleges that the plaintiff "'regularly'
28 missed meal breaks and that defendants maintained a 'policy or practice' of both meal and rest

5

break violations." *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016); *see also Mendoza v. Nat'l Vision, Inc.*, No. 19-cv-01485-SVK, 2019 WL 2929745, at *4 (N.D. Cal. July 8, 2019).  And one court has collected cases to conclude that up to 60% has been found reasonable.  *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020).  There is no support, however, for assuming that a 100% violation rate based on the allegations in this case is reasonable.

## CONCLUSION

The Court grants Lamar's motion to remand because Defendants have not met their burden of establishing that more than $75,000 is in controversy.  This case is remanded to the Superior Court of California for the County of Lake.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  July 2, 2025



_____
JON S. TIGAR
United States District Judge

6